And we'll turn to Carmichael against the superintendent. Can you please put down the microphone so I can hear you? Move it down? Sorry, Your Honor. Is that better? I can hear you. Okay, thank you. The magistrate's report in this case, report and recommendation, is really a blueprint about how a proper resolution of this case would be, including the appropriate habeas deference. If I could just address a discrete issue first. The fact-finding by the trial court. Of course there was a fact-finding in this case. The trial judge said he was counting Ms. Velarde as an African-American person for Batson purposes. And when the court said, I'm not saying I'm right, I'm not saying you're wrong, that was just the court's way of saying, I'm not saying this as a scientific matter, I'm just going based on how she looks, which is of course how the prosecutor proceeded when he was deciding, in this case, to keep Ms. Velarde as a juror. The court explained that the law required him to put on the record all of the juror's race as closely as he could in a Batson context. And the law wouldn't require that the judge make a record of his just passing thoughts on the subject. Obviously it would be for the purpose of appellate review and evaluating the propriety of the ruling. So the court said that, but then in addition, when the issue came up later and defense counsel contested the subject, the court emphasized at that point that in fact he had ruled that Ms. Velarde was a black person, an African-American person for the purposes of this ruling. So in this case I think it's clear that for habeas review, for any kind of review, what we're dealing with is the numbers are that nine black people were considered, that six were struck by the prosecutor, one was struck by defendant, and two ultimately served on the jury. So that's at least a starting point that's different from the numbers that were used by the district court in this case. A major... What accounts for the confusion, if it was confusion? I'm sorry, by the district court? Yes, why the differences? The district court relied, was concerned about the judge's remarks to defense counsel. I'm not saying, at one point the judge said, when defense counsel said, I believe she said, I had her recorded as Hispanic, and the judge said, you know, and they had a discussion back and forth, defense counsel said, I said that based on her first name sounded Hispanic. So the judge said, well, listen, I'm not saying I'm right and you're wrong, it's just that I'm required to put my, he didn't use the word finding, but he said I'm required to put on the record my take on what she is. So I'm going, I'm paraphrasing him, but it's based on, I'm not saying you're right, I'm not saying you're wrong, I'm not saying you're right. And the district judge had a different computation, is that what I'm getting at? Yeah, the district judge said that it was not a fact finding, which warranted deference by this court on, by the federal court on habeas, so therefore the district court was not accepting the fact that there in fact were, was another black person considered, and that was a person who the prosecutor allowed to be on the, did not strike, defense counsel struck her. But I would just say, Your Honor, just briefly, even if this court were to view this as not a formal fact finding, the point is this court can see on the record and make its own determination that this was something that could have been, there was no real opposition on the other side that was rational, because all he was saying, all the defense counsel was saying is that her first name sounded Hispanic. So that's not much of a basis, but ultimately the real answer is, even if she were Hispanic, that doesn't mean she wasn't a black person. So really what the judge was saying is, I see her as a black person. You're saying she's Hispanic, but they're not mutually exclusive. So for Batson purposes, she can be viewed as an African American person who the prosecutor did not challenge. And since the numbers in this case were the only issue, as far as the district court was concerned, it takes on particular significance, and that's why I thought it's important for this court to know our position on how many jurors there were involved. But that gets to another, the major premise, the major conclusion, I guess you could say, by the district court that was erroneous, is that the district court ruled that the numbers alone in this case required the state trial court to make a ruling of a prima facie determination. It required the court for the attorney to go on, the prosecutor, to step two. And there's simply no legal basis. It could have been what? Step two? Step two would have been to require the prosecutor to provide explanations, race-neutral explanations for his challenges. And that's something that, as the magistrate pointed out, I thought very aptly, if he were the trial judge, if someone else were the judge, he might very well have required the prosecutor to give explanations. But that's not the standard for habeas review. But just taking a step backwards, if I could just make the additional point that there is, in fact, no, the district court treated it as this was some sort of per se threshold that had been crossed. And in the face of those numbers, the state trial court had no choice but to do that, if the court were acting appropriately. And it's just that the law is exactly the contrary, because there is no specific numerical threshold beyond which a prima facie case is absolutely clear, required, and much less this one. But more importantly, Batson itself and all of the cases that have followed Batson have required, have insisted that every court evaluating a Batson application must consider all of the circumstances, including the numbers. So the numbers plus anything else that is in the case. And that, of course, makes complete sense, because the issue in a Batson situation is what was the motive? Was there a discriminatory intent behind the exclusions? And how can one know such a thing without considering all of the circumstances? So all the circumstances were available, as opposed to the ruling by the district court that because, in this case, the trial, the defendant at trial, conceded that there were no other circumstances supporting an inference of discrimination. And in the district court's view, because the defendant's application was based solely on the numbers, the statistical evidence, I should say, therefore the trial court had no right to consider anything else, and the court on habeas has no right to consider any of the other circumstances, which flies in the face of the rules. And certainly this court should think that it's appropriate to consider all the other circumstances. The other thing, which, of course, is very important on habeas review, is that there are avenues of support for the state court determination in this case, and those were outlined in great detail and in a very well-reasoned way by the magistrate. And they were essentially dismissed by the district court, and I think that this court should certainly focus on those. In particular, there are a number of them. One is the fact that there were two African American people who served on the jury, and that that number mirrored the number by the percentage of the representation on the veneer. That's a very significant factor. And the district court said, well, that's... Was the veneer thought to be or assumed to be representative? It was. Apparently there was an agreement here, yes. There wasn't a stipulation on it? There wasn't a formal stipulation, but as I read the record, there seemed to be an agreement, and I didn't see any way to, I didn't see any reason not to treat it. Nobody suggested otherwise. Right. Everybody seemed to. And there's been an agreement all along that there was a mirrored representation. That's not coming from us now for the first time. I believe it's even in the district court opinion. I don't think that's open to any question. The district court minimized the significance of that by saying, well, it was a compelling circumstance. But the district court, the answer to that was that it could also reflect the sinister motive on the part of the prosecutor to exclude, to allow only a certain number of minority people, of black people on the jury just for the purpose of being able to get away through a Batson application. But the problem with that is, you know, that could be said in any case. It's almost like you can't win either way if you exclude people, but if you let them in, it reflects a sinister motive to get away with something. The point is there's nothing to indicate in this case that that's what happened. And a real quick question. The Supreme Court hasn't said that Batson challenges are subject to harmless error. There's still structural error as far as the Supreme Court's concerned? Our reading of it is that they have. Okay. Yeah, I mean, certainly if Your Honor, as I read Ayala, I would agree, we would agree with, tend to agree with the district court's reading that that was not a straightforward harmless error for Batson, but rather more of a combination that may be perhaps more of a presence of counsel, right, to be present issue. Right. If we're wrong and it would help us, if Your Honors, you know, were to read that as a statement of harmless error, that certainly would be okay. But I, we didn't, we thought. Okay. We thought. Honest assessment here is it's still structural analysis. It seems to be, yes. Although, you know, if in the unlikely event that we're unable to persuade the court that we're correct on the merits, we would come back and petition on Bonk to try to perhaps get this court to consider, reconsider in light of all the reasons that we put forward. But that's not an issue for today. But the fact that there were other factors also, I would just point this court, I know, have I exceeded my time? I'm sorry. No, no, it's okay. I haven't cut you off. Okay. Okay. There were other avenues of support for the state court decision, and I think it's important for this court to consider those because they were swatted away. The fact that defendant and the excluded jurors were not of the same racial group, our position was not that that means he can't take, he can't make a Batson application, but it's an example of a situation, another potential, a situation where there's a potential for an inference of discrimination and it was absent. And so also the fact that the defendant conceded, and this is a major one, the fact that the defendant at trial conceded that there were no instances, and I mentioned this in the other context, but it's important in terms of an alternative theory, the fact that the defendant conceded that there were no circumstances indicating discrimination. So this is a record where, yes, you had numbers and you could look at the numbers, but apart from the numbers, how do we interpret the numbers, which is always the issue in a Batson situation, that there was nothing. Now, the district court viewed that, what should be a significant point, and said it was an unwise concession on defendant's point, for the defense counsel to say that, and that it doesn't matter because there's enough without it. But it has to matter if, even from the defendant's point of view, the defendant can't point to anything else which indicates that there's discrimination. Your reservation. Oh, yes. Thank you. Thanks very much. May it please the court, Sarah Gerwitch from Office of the Appellate Defender. I'm here on behalf of Brian Carmichael. Your Honors, this was a straightforward application of Batson by the district court. In Batson itself, the court said that a pattern can establish that first step, the inference of discrimination. And then in Johnson, the court went on to say that that first step, inference of discrimination, is not meant to be onerous. If this is not a pattern, I'm not sure that anything absent full exclusion could be. We have a challenge rate twice what would be expected statistically. We have an exclusion rate that ranges from 75% to 100%. So here we have a pattern. Now, Judge Cabran has asked a question, and I apologize if I misunderstood, but about whether there was agreement that the veneer represented the community. And there was not agreement. In fact, the defense said as part of multiple renewals of the Batson application, this panel is sparse of minorities. So that is a factor that certainly should be considered. And I think that there's confusion here. I don't understand how to consider that. It seems the final jury reflected the composition of the panel, of the whole pool that was being examined. Correct, Your Honor. So there are two separate things, both of which are relevant. Because this is one place where I don't disagree with my adversary. All the circumstances are relevant. So one of them is what I just made reference to that had been made reference to previously, that the panel was sparse of minorities. So the point being, if we exclude even a small number of African-American individuals, we are going to run into a problem of having a panel that has excluded a tremendous percentage of African-Americans. I'm not getting this. I'm sorry. I understand that you could have a challenge to the way you gather up jury members, and that if you're not doing all you need to do, that that's one kind of challenge. But here we've got – there's no challenge based on that. Correct, Your Honor. That is a challenge that was not made here. So to your question earlier, that how do we look at the fact that the ultimate jury was roughly representative of the panel. So let's put aside whether the panel – The reality out there in the world. Exactly. And that's a factor. But as Judge Fallow said, it's not a determinative factor. And we look back at Batson itself to see why. A couple of reasons. One is that Batson law is very clear that even the exclusion of a single prospective juror for discriminatory reasons is a Batson violation. So just because you do not exclude everyone, just because you end up with a statistically similar ultimate jury, that does not mean that you do not have a Batson violation. And that is well-settled Supreme Court law. But also, and Judge Fallow addresses, that the more, I guess, strategic thing that somebody could do is let's say that you were going to act in a discriminatory way. And let's say in this case, after the first Batson violation – I'm sorry, the first Batson challenge, that that's complete exclusion at that point. A hundred percent. Two of two. So maybe as a strategic matter – and I don't know what happened here because it never shifted to the next step where the prosecutor had to say why he did what he did. But Judge Fallow speculated, well, maybe what you would do in that situation is you would not challenge an African-American person to give yourself kind of Batson insurance. So we're not going to encourage or allow that sort of behavior given – She – sorry, Your Honor. She looked, I believe, to Alvarez for that. And I believe there are other cases that she cited. And I think that she was also looking at it in a realistic fashion. So there's also something that came up just in terms of settled Batson law that my adversary brought up, the fact that my client and the excluded individuals are not members of the same racial group. And that's true. It's a factor. But it's not determinative. And, again, the Batson law is clear that discrimination in the exercise of preemptive challenges does not rise or fall on whether you have the defendant – I'm sorry, the defendant and the people challenged being of the same race. I think it's also important to recognize that my adversary has said that the defense conceded that there's nothing else in the record. That the record is clear that defense counsel did not understand that under New York law, he wasn't required to present anything else. And we raised that as ineffective assistance of counsel given the disparity between New York law and federal law. And Judge Phelan did not reach that issue because of the Batson decision. So that is very much in dispute whether that was based on his misunderstanding of his burden at step one under New York law. Let me ask you if I may interrupt a moment. Apart from the statistics to which your adversary counsel has adverted, what else is there that we would consider if we're using the talismanic phrase in all the circumstances? What are the other circumstances besides the statistical array? Well, at step one, what the panel looked like. We talked earlier about the idea that it was sparse of minorities. So that's relevant. And then some of these other things are relevant that ultimately what happened. But not determinative at step one. I mean, let's get back to what the court said in Batson and in Johnson. In Batson, the court listed out a few ways that the step one burden could be met and specifically listed a pattern of strikes. So it's very similar to this court's decision in Harris, Harris v. Coleman. May I ask a question about the final step? I understand your argument as to step one. In the final jury, how far did the percentage of African-Americans on the final panel that convicted Carmichael exceed or be below the percentage of African-Americans in the venue? Your Honor, it's actually approximately equal, but it's the challenge rate that deviated significantly. One would expect a challenge rate of about 14%, and the challenge rate was, in fact, 29%, so more than double. Also, I would like to address this issue about Ms. Velarde because my ‑‑ Isn't at least part of the formula the actual jury that convicted? Your Honor, that at this point on habeas review with this very limited standard, that is something the court can consider. But if we're going back to the question of whether a pattern of discrimination, whether an inference of discrimination was established, we can look at the exclusion rate, the challenge rate, the composition of the veneer, and as your Honor suggests, the ultimate composition and the fact that not every one of those resoundingly says discrimination does not mean that that step one burden, which Johnson says, the Supreme Court said in Johnson, should not be onerous. If we were at step three, now keep in mind the remedy that's been ordered here. Judge Fela has given the government the option of a reconstruction hearing. So if there's an affirmance here and that remedy goes forward, then the prosecution has the opportunity to state its reasons, and if it in fact has race neutral reasons, we don't know, we don't have that record. Then a broader analysis of whether all these things together demonstrate that these are actually proxies for discrimination would be appropriate. But on this limited question of was an inference of discrimination established, I'm sorry, Judge. In what year was Carl Iacocca convicted? It's been a number of years since my client was convicted. He's, um, he's, um, it's, my, actually my adversary is going to tell me. In 2007, your Honor. It's possible the reconstruction would take place 10 years after the conviction. But your Honor, it would be a government witness, and I know that there are typically good notes on these things. I would like to just address the Velarde. Why don't you go ahead, you'll be given more time, don't worry. Judge Winter's comment or inquiry regarding the reconstruction hearing. Tell us what that hearing would consist of. Well, it would just bring everything back to if the trial judge had applied the I'm sort of curious, what's the hearing, who's holding the hearing, and what's going on in that hearing? So, the understanding is that the hearing would be conducted in state court by the original trial court, and that I assume that the government would call its personnel who handled the case and would rely on whatever notes they had to explain why they struck who they struck, and that if those reasons are race neutral, then we would shift to the third step, and then it would be the defense that would have the burden, the ultimate burden, of showing that racial discrimination infected the proceedings. Let me ask this another way. In what way would that reconstruction hearing provide any additional evidence other than what is already on the written record? That is, we go back to the same Supreme Court justice, right? And what is it that he would do? Who would he call, or who would you call? You would have the prosecutor who would state race neutral reasons. There are no if they exist. That's not in the record because the prosecution wasn't called. So if the prosecutor is available, he would come back and presumably he would take the stand?  We struck number seven because of this. And so they would need to provide those race neutral reasons. Are those notes available on the record now? They are not, Your Honor. Do we know that they exist? I do not know if they exist. I know that the New York County District Attorney's Office is very careful, and it would shock me if they did not exist. Then the burden would shift to the defense, assuming race neutral reasons could be established, and there are numerous things in the record. Defense counsel did not understand that he needed them for step one, but there are numerous things in the record that he could present that would support the defense belief that discrimination was at play here. So that's not in the record. There's actually quite a lot that's not on the record. I mean, that's the problem when Batson gets cut off, where it got cut off here, is the record's not developed, so you can't have just review on the papers. And I think that's one of the reasons that the court has been so clear that it's not onerous. It's not saying, oh, say Batson, and then we're going to shift to two, but it's saying let's move these forward because discrimination is such a serious harm to cases. I mean, in Johnson, and I think this goes to Judge Rustani's question earlier about harmless error, and I know that my adversary concedes this, but Johnson was 2005, and the court was invited to say harmless error analysis applies. And the court did just the opposite. The court reaffirmed that this is a fundamental constitutional right, that the violation of which harms the defendant, it harms the jurors, it harms the criminal justice system, and we want these cases to move forward. So if you can meet the not onerous burden at step one, we want to hear from the other side. And that's all that would happen here is we would hear from the other side, and then it would ultimately be our burden to establish that these things were a proxy for discrimination. Whether we could meet that burden, I don't know. We don't have that record. But I would like to address the question about Ms. Velarde because this is a factual issue that the judge said, I'm quoting here from the record on the appendix page 324, I'm not saying you are right and I am wrong or the opposite. So that's not a factual finding. Then at 325, I'm not saying you're wrong. Then at 328 of the appendix, if he's talking about the numerical showing, he says, if that's the basis of the challenge, I note it. Whether in your mind it's the five, my calculation, or four out of six, if that's the only basis for the challenge, then the challenge or objection has to be denied. So what he's saying here, I'm sorry, that's page 328 of the appendix. So the judge is saying, I'm not going to decide either way. Take your number, take my number. Either way, it's not enough because my understanding of New York law, to which I am bound, is that the presumption is that a numerical showing is insufficient, absent other facts or circumstances. Now that is the rule that was applied in this case, and that is an unreasonable application of Batson and Johnson. So, checking my notes quickly to make sure I haven't missed anything, if the court has no further questions, we ask for affirmance. Thank you. Ms. Morse, you've reserved two minutes. Okay. Just to supplement on the fact-finding issue, because I think it's important, on pages 323B and C of the voir dire, I'm sorry I don't have the appendix page, but it's 323B and C is where the court explains on another discussion that, look, when I said that number, I mean that number, we want it to be counted as, and that confirms that it is a finding. But I'll leave that part to your honors. I just want to address a couple things, if I could. The reconstruction hearing. The only reason for a reconstruction hearing in this case is if the habeas were properly granted, and that would be a statement that, in this case, the state court judge, even under habeas review, was obligated to make a prima facie finding. There's no basis for that. And that's why there's no reason to have a reconstruction hearing. But the issue at a reconstruction hearing would be what were, if you move on to step two and require the prosecutor to give his reasons, I would just say I'm not saying we couldn't meet our burden. We would certainly, our intention would be to meet our burden if we had to, and hopefully we wouldn't have to be in that situation. But I do think it's relevant to say that at this point the trial assistant has passed away. He passed away very young from an illness. So it is more complicated. Who is that? The person who tried the case, whose motives we would have to be at issue at a hearing. I think as Judge Winter pointed out, when you have nine years, when you're trying to do a reconstruction hearing nine years later, there are certain difficulties. The trial judge is no longer sitting. I don't know. He may be in good health and somewhere else and could be brought back, but I don't know. And I'm not saying, as I said, I'm not saying we couldn't meet our burden through notes or something else, but it's complicated because one has to persuade a fact finder of the intent of a person who's absent. How often? Do you have any sense of how often reconstruction hearings are held? On this subject, certainly not very. I've never seen, in my time, I've never seen one. I'm not saying that they don't happen. They could happen if there were a situation where the case is reversed, you know, for failure to move to step two. But, you know, nine years later, I don't think that's very common. I think it could be a product also of the deferential standard on habeas review because in order for a habeas court to demand on a prima facie, failure to make a prima facie case, there aren't, you can see, Your Honors, there aren't that many cases because there is no, as again, there is no per se rule. There is no number beyond which, you know, the bell goes off and you have to make a prima facie, you have to move on to step two. In response to, I believe it was Judge Cabranes' question about, direct question about what else is there in the record? What can you point to other than the statistical evidence? And the answer is nothing, zero. You have a concession by defendant that there wasn't any, but that was not. We don't have the notes. The notes don't exist. I personally don't. I have every reason to think that there are notes and I haven't seen them. But, you know, Your Honor, notes are not always complete and notes are not always enough to, you know, make a showing. So I just think that it's not a capable, you know, it's not something that this court should think, oh, there's no problem, it will just be, you know, kind of a standard thing, you go through it and there's no issue. But I also think there's a principle, there's a legal principle involved, and I think in this case this court can look at the record and look at the analysis used by the district court and see that, number one, there is only the statistical evidence, there's not one iota of indication of discrimination. I would also point out there's actually an affirmative. The district judge didn't point to anything else. No. I'm sorry, no. No. No. But I would point to something that actually, I'm not sure that it came up earlier, magistrate pointed out in his report, but I don't know that this report dealt with this. There are explanations in the record, you know, the explanations that sort of come out of the record without any information from the trial assistant about these four of the jurors who were black jurors who were excluded had, so to speak, law enforcement connections, and that was significant. You know, on the claim about counsel there was a complaint, as my adversary mentioned, that they claimed that the defense lawyer was incompetent for not bringing that to the attention of the trial court. What does that mean, law enforcement? That they had friends in law enforcement, so-called law enforcement, so-called, that they had friends who had law enforcement connections, and so, therefore, according to defendant, these were people who would be presumed to be favorable to the prosecution, and, therefore, if not for their race, there could be no other reason to have excluded them. But there's an answer to that, and that is that when you look at these jurors, at least only four of them can we identify exactly who they were because there was a problem with the voir dire and how it was recorded. But these four law enforcement ones, that definition is a very broad one, and two of them had, I believe it was two of them, I think, who had connections to correction officers. Now, correction officers, from a state prosecutor's point of view, I don't know about a federal, but certainly from a state, that's not necessarily a friend, a desirable juror from the people's point of view. There's certainly a well-known, issues going on, there are investigations, so correction officer connections- A situation, as we say in New York. Exactly. A situation. And a race, basically the point is, a race-neutral explanation, that that would be a reason to exclude that juror because of the connection to corrections officers. Another one had connection, there was also the issue of high-level NYPD relatives. And we had, in our case here, these were low-level police officers from the NYPD who were testifying. And that sometimes can make a difference. And what happened here, as a way to know that, is that the prosecutor excluded a similarly situated white juror who also had connections to, her nephew was an NYPD captain. I'm sorry. Are you arguing that a reconstruction hearing would be feasible, and we ought to do it? No, no, absolutely not. I'm saying, I'm giving your honor an explanation for a reason to affirm- My interest is no more. Pardon me? Seeking my interest is no more. Okay, well, the reason I'm saying it is that it came up, the district court pointed to this as support for the notion that it must have been a racially motivated challenge because these were people who we would expect to be, the prosecutor would expect to be pro-prosecution jurors. So, but for their race, there would be no reason to exclude them. So, my point is that calling them law enforcement, these people didn't- Because you're standing here trying to defend- Your job is to defend the judge not finding out why people were stricken. You're trying to explain why they were. I just find that very odd. Well, I guess I was doing it for two reasons. Because of the state, because of the deference that this court, that on habeas review, if there's a way to sustain and explain that the decision was a proper one in state court, then that matters for habeas review. It's a deferential review. So, if the district court points to something as being something that indicates there was a problem, an indication of discrimination, I felt that it would be of interest to your honor to hear that there was another way of looking at it that it wasn't something that indicated discrimination. Plus, I also wanted to point out that there's actually affirmative indication that there was not discrimination because as to one of the jurors, one of the non-black jurors who was excluded, I guess to support that idea that one of the non-black jurors shared the same background. But maybe this is too much information for you. Sorry. All right. I think we've satisfied. We thank you both for longer than was anticipated. No, but we're both grateful for both your arguments. Thank you very much. We'll reserve the decision.